# United States District Court

<u>__MIDDLE__</u> _____ DISTRICT OF _____ <u>__ALABAMA__</u> _____

| | |
|---|---|
| **In the matter of the Search of**<br>(Name, address or brief description of person, property or premises<br>to be searched)<br><br>**7215 County Road 37, Clanton, AL,<br>further described as a brick single-level<br>dwelling on the East side of County Road 37<br>and one mile South of Alabama Highway 22** | **APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT**<br><br>CASE NUMBER: *2:05 mj 138- VPM* |

I _____ Devin L. Whittle _____ being duly sworn depose and say:

I am a(n) __Drug Enforcement Administration Special Agent_____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

### 7215 County Road 37, Clanton, AL, further described as a brick single-level dwelling on the East side of County Road 37 and one mile South of Alabama Highway 22

in the _____ Middle _____ District of _____ Alabama _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

### See Attachment A

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure) concerning a

violations of Title ___ 21 ____ United States Code, Section(s) __841(a)(1) and 846__ .

The facts to support the issuance of a Search Warrant are as follows:

### See Attached Affidavit Which is Incorporated by Reference Herein

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

S/A *[signature]* Whittle
_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

October 19, 2005 _____ at    Montgomery, Alabama _____
Date                                                                              City and State

_____        *[signature]*
Vanzetta P. McPherson, U.S. Magistrate Judge        _____
Name and Title of Judicial Officer                              Signature of Judicial Officer

# ATTACHMENT A

## PROPERTY TO BE SEIZED

(1)    Books, records, ledgers, and/or writings which record the receipt and/or distribution of controlled substances including cocaine and marijuana as well as any other memoranda relating to the transportation, ordering, purchase, delivery and/or distribution of controlled substances, which writings and records are contraband as well as evidence;

(2)    Papers, tickets, notes, schedules, receipts, and other writings and objects including but not limited to gasoline receipts, air travel vouchers, and motel/hotel embossed articles, which do or tend to establish domestic and/or interstate travel in interstate commerce;

(3)    Addresses and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, any and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above-described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage;

(4)    Currency of the United States including paper and coin currency, also precious metals, jewelry, financial instruments, including but not limited to, negotiable commercial paper, and currency obtained, connected with and/or possessed to facilitate the financing of illicit drug trafficking;

(5)    Photographs and videotapes, in particular, photographs or videotapes of co-

conspirators, of assets, and/or of controlled substances, in particular, methamphetamine;

(6)    Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items and/or important documents including books, records, and other writings as well as United States currency as described above, and any keys or other evidence of the existence and usage of any lockers, safety deposit boxes or other secure receptacles situated elsewhere than at defendant property;

(7)    Articles of false identification;

(8)    Cellular phones, including all names and telephone numbers stored in the cellular phone, all caller identification information associated with said cellular phone and all dialed numbers stored within said cellular phone.

(9)    All information stored inside a caller identification box associated with any telephone land line found in said residence or business.

(10)    Radio electronic equipment including but not limited to transceivers, receivers, scanners, antennae, RF detectors, walkie talkies, wireless transmitters as well as other electronics which are used ancillary to such equipment, including but not limited to, electrical calibration equipment, meters and test equipment;

(11)    Computers or other electronic devices which are capable of storing information, including, but not limited to computers, lap tops, floppy disks, cd roms, zip disks, hard drives, and personal data assistants (PDA).  Government intends to search all files in any computers seized from said search warrants;

(12)    Firearms;

(13)    Controlled substances, in particular, cocaine and marijuana;

(14)    Paraphernalia for packaging, cutting, weighing, and distributing controlled

substances, including but not limited to, scales, bags, pipes, and duct tape;

(15)  Any and all other material evidence of violations of Title 21, United States Code, Sections 8441 (a) (1), and 846, together with fruits, instrumentalities and evidence of crimes at this time unknown.

AFFIDAVIT IN SUPPORT OF APPLICATION

I, Devin L. Whittle, Special Agent of the United States Department of Justice, Drug Enforcement Administration (DEA) being duly sworn, depose and state as follows:

1.    Your affiant is a Special Agent with the Drug Enforcement Administration (DEA). I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.    I am currently employed with the United States Drug Enforcement Administration (DEA), and have been so employed for the past nine (9) years. I am currently assigned to the New Orleans Division, the Montgomery District Office. Prior to becoming a Special Agent, I was a Montgomery, Alabama, Police Officer for eight (8) years. I have worked exclusively on narcotics investigations for fifteen (15) years. I have investigated criminal violations of the Federal controlled substance laws, including, but not limited to, investigations involving smuggling of controlled substances, distribution of controlled substances in violation of Title 21, United States Code,

Section 841; and laundering of the proceeds derived from the sale of controlled substances.

3.    I have conducted and participated in investigations that have resulted in the seizure of illegal drugs including, but not limited to, investigations involving smuggling of controlled substances, distribution of controlled substances in violation of Title 21, United States Code, Section 841; and laundering of the proceeds derived from the sale of controlled substances in violation of Title 18, United States code 1956 and 1957.

4.    I have conducted and participated in investigations that have resulted in the seizure of illegal drugs including, but not limited to, multiple-kilogram quantities of cocaine and crack cocaine, multi-kilogram quantities of marijuana, ———————— methamphetamine, ———————— and Methylenedioxymethamphetamine (MDMA), various designer drugs that are controlled substances, and millions of dollars in illegal drug proceeds. I am familiar with, and have participated in all of the normal methods of investigation, including, but not limited to, foot, auto, air and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, trap and traces, cellular telephone cite tracking, mobile tracking devices, the use of undercover agents, and the identification of co-conspirators through the use of drug ledgers, telephone records and bills, photographs and financial records.

5. I have participated in numerous searches, pursuant to consents as well as warrants, for narcotics and other related drug trafficking contraband during my seventeen years in law enforcement; in said searches, narcotics as well as currency, ledgers, logs, books, documents evidencing drug dealing and assets, pagers, telephones, cellular telephones, and other electronic devices (computers, fax machines) have been found.

6. Based on my training, experience, and participation in investigations of traffickers in large quantities of cocaine and crack cocaine and marijuana in the United States, in the tracings of proceeds on transactions involving illegal narcotics and in uncovering smuggling and distribution of illegal narcotics, I know that:

    a. Large scale narcotics traffickers must keep on hand large amounts of United States Currency in order to maintain and finance their ongoing drug business.

    b. Drug traffickers very often place their assets in the names of others, including parents, spouses, and children to avoid detection of these assets by law enforcement.

    c. Even though these assets are in other persons' names, the drug traffickers' continue to

use these assets and    exercise    control    over
them.

d.    Drug    traffickers    encounter    tremendous
problems  handling  large  sums  of  U.S.  currency
through  financial  institutions  because  of  the
currency  transaction  report  which  is  required  to
be  completed  and  filed  with  the  Internal  Revenue
Service    any    time    cash    transactions    exceed
$10,000,  which  causes  them  to  maintain  large
amounts  of  cash  in  other,  easy  to  access,  but
secure  places  (such  as  safe  deposit  boxes  and
safes).

e.  Drug  traffickers  maintain  telephone  books,
both  personal  and  electronic,  records,  receipts,
notes,  ledgers,  airline  tickets,  money  orders,
and  other  papers  relating  to  the  importation,
transportation,  ordering,  sale,  purchase,  and
distribution of controlled substances.

f.  These  aforementioned  telephone  books,  records,
receipts,  notes,  ledgers,  airline  tickets,  money
orders,  and  other  papers  are  stored  and  readily
available  to  the  drug  traffickers  in  their
houses,  storage  sheds,  rent  houses,  safes,  banks,
safety  deposit  boxes  and  places  of  business.

g. It is common for large scale drug traffickers to secrete contraband, including controlled substances, proceeds from drug sales, including personal items, electronic items such as televisions, VCR's, DVD players, stereos, and records of drug transactions in secure locations such as safes, lock boxes, safety deposit boxes in their names and relatives' names for ready access, and to conceal them from law enforcement.

h. Persons involved in drug trafficking conceal in secure locations, with ease of access, large amounts of currency, financial instruments and evidence for financial transactions relating to the obtaining, transfer, secreting and spending of large sums of money obtained from engaging in drug trafficking activities.

i. When drug traffickers amass large amounts of money from trafficking in illegal drugs, they attempt to hide their illegal origin. In order to accomplish this, they use banks, cashiers checks, money drafts, real estate and business fronts.

j. Documents relating to such attempts to hide the illegal origin of such proceeds are kept

where the traffickers have ready access to them, often in their houses or structures over which they have control, places of business, and often in close proximity to illegal drugs.

k. It is common for drug traffickers to travel to major distribution centers such as California, Arizona and South Texas to receive and distribute drugs. These methods of transportation include commercial airlines, commercial vessels, private aircraft, rental vehicles, and other means of transportation.

l. It is common for drug traffickers to keep and maintain records of their travels in locations for easy access such as their residences, places of business and other structures over which they exercise control.

m. Drug traffickers commonly maintain addresses or phone numbers in books, papers, compact electronic telephone books which show names, addresses, and/or telephone numbers for associates in the trafficking organization, and they keep such records in their homes, places of business or other structures over which they exercise control.

n.    Drug traffickers take or cause to be taken photographs of themselves, their associates, their property, and their drugs; they usually keep these photographs in their homes or places of business with other drug related documents.

o.    Drug traffickers often maintain and utilize cellular phones and pagers to facilitate drug trafficking.    It is common for these communication devices to be listed in other persons' names.    However, drug traffickers continue to use these devices and maintain control over them.    Drug traffickers keep billing records for these mobile phones and pagers in their homes or businesses or other structures over which they exercise control so they are readily accessible.

p.    It is common for drug traffickers to use cellular phones, fax machines, pay phones, and long distance calling card services to avoid detection and interception by law enforcement agents.

q.    Drug traffickers often maintain the items listed in attachment A for long periods of time

and rarely destroy them.

7.    This affidavit is made in support of an application to search the residence located at 7215 County Road 37, Clanton Alabama, and to seize items listed in attachment A, in violation of Title 21, United States Code, 841 (a)(1), and 846.    I am also seeking evidence of occupancy and ownership of premises, and the location of any drug or drug proceeds stash location.

8.    The information in the paragraphs below which is furnished in support of this application, comes in part from agents and officers of the Drug Enforcement Administration (DEA), Agents of the Alabama Bureau of Investigation (ABI), the Prattville, Alabama Police Department, the Chilton County, Alabama Sheriff's Department, The Central Alabama Drug Task Force and other Law Enforcement Agencies and by the analysis of surveillance, information from reliable informants, pen register information, evidence obtained through search warrant, the use of public records, as well as searches of criminal justice background indices concerning the narcotics trafficking activities of Clifton JOHNSON and his associates.

9.    The Drug Enforcement Administration is investigating and I continue to investigate a drug distribution organization headed by Clifton JOHNSON and other known and

unknown individuals.  The facts set forth in this affidavit
are not all the facts known to me regarding this
investigation, only those facts I believe are necessary to
establish probable cause to obtain a search warrant for
7215 County Road 37 in Clanton, Alabama.  This organization
is responsible for the distribution of multi-kilogram
quantities of cocaine, multi-kilogram quantities of crack
cocaine and large quantities of marijuana in the Northern
District of Alabama area as well as in the Detroit,
Michigan and Rock Hill South Carolina areas.

10.  This affidavit is submitted in support of an
application for an order authorizing the search of the
residence located at 7215 County Road 37, Clanton, Alabama.
Your affiant is familiar with the brick single level
dwelling located at 7215 County Road 37 Clanton, Alabama
being on the east side of County Road 37 approximately one
mile South of Alabama Highway 22.  Agents involved in this
investigation have conducted surveillance of the residence
numerous times during the course of the investigation.  TFA
Todd Mims and other agents have observed JOHNSON and
JOHNSON'S vehicles at the residence located at 7215 County
Road 37 Clanton, Alabama consistently throughout the

investigation. The facts tending to support these claims are as follows:

11.    In July of 2004, agents involved in this investigation received information from the Central Alabama Drug Task Force regarding the drug activities of Clifton JOHNSON of Clanton, Alabama.    Central Alabama Drug Task Force Agents developed confidential source, hereinafter referred to as CS#1 that had purchased crack cocaine from Terrence NEWKIRK of Clanton, Alabama.    Your affiant is aware of the fact that CS#1 has no felony convictions. However, your affiant is aware of the fact that CS#1 has pending drug charges for distribution of a controlled substance.    Further, CS#1 is cooperating with other agents in an effort to help himself with pending charges. DEA has no information that CS#1 has ever provided false or misleading information.    CS#1 is known to be a creditable source of information.    In addition, CS#1 has provided agents with information, some of which has been corroborated through other confidential sources information and this investigation of Clifton JOHNSON'S drug distribution organization. Further, CS#1 stated that Clifton JOHNSON was the father of NEWKIRK and that JOHNSON was transporting drugs from California to Alabama for NEWKIRK.    Agents received Clifton JOHNSON'S telephone

numbers from CS#1. Telephone number 205-415-0108 and 205-587-2504 were the telephone numbers obtained from CS#1. Both of these telephones are subscribed to by Clifton JOHNSON at 7215 County Road 37 in Clanton, Alabama. Further, agents subpoenaed the call records regarding JOHNSON'S telephones. Based on this information, TFA Todd Mims along with the Central Alabama Drug Task Force and the Chilton County, Alabama Sheriff's Department jointly targeted Clifton JOHNSON as a local leader of a drug distribution organization.

12. On February 10, 2005, CS#1 made a consentually recorded phone call to Clifton JOHNSON. Subpoenaed records indicate that CS#1's cellular telephone was in contact with a cellular telephone subscribed to by Clifton JOHNSON at 7215 County Road 37 in Clanton, Alabama. This conversation was witnessed by Drug Enforcement Administration Task Force Agent Todd Mims. The purpose of the phone call was to arrange the purchase of two ounces of crack cocaine. During this conversation, JOHNSON told the CS that he was looking for Christopher ULMER because ULMER was "sitting on a brick" that belonged to JOHNSON. Based on your affiant's training and experience, I know that individuals involved in drug trafficking commonly refer to a kilogram of cocaine

hydrochloride (powder cocaine) as a "brick". Further, during the conversation, JOHNSON told CS#1 to call when he needed the crack cocaine.

13. On February 15, 2005, Agents with the Central Alabama Drug Task Force obtained a State of Alabama Search Warrant for the residence of Christopher ULMER located at 1515 15th Place in Clanton, Alabama. During the search, agents located approximately 1500 grams of Cocaine hydrochloride (powder cocaine), approximately 600 grams of Crack Cocaine and approximately 6.21 pounds of Marijuana. Based on the abovementioned conversation in paragraph #11, regarding the "brick" ULMER was "sitting on", and the amount of cocaine hydrochloride found during the search warrant at 1515 15th Place in Clanton, Alabama, I believe the "brick" described in that conversation was the cocaine hydrochloride found during that search.

14. On February 25, 2005, CS#1 told agents that he talked with Clifton JOHNSON over cellular telephone number 205-415-0108. This cellular telephone number is subscribed to by Clifton JOHNSON at 7215 County Road 37 in Clanton, Alabama. During the conversation, JOHNSON stated that he was out $24,000.00 because of Christopher ULMER'S arrest.

Based on your affiant's training and experience, I believe that JOHNSON is out $24,000.00 because the drugs that were seized from ULMER's residence belonged to JOHNSON.

15. On April 11, 2005, CS#1 made a controlled purchase of approximately two ounces of Cocaine hydrochloride from Clifton JOHNSON.   This purchase was under the direction and control of agents.   CS#1 was searched before the controlled purchase and was provided with the necessary funds to complete the purchase of two ounces of Cocaine. CS#1 was followed to the meeting location with Johnson. Agents conducting surveillance were able to observe and positively identify JOHNSON as the source of the Cocaine that CS#1 purchased.

16. On June 16, 2005, Drug Enforcement Administration Task Force Agent Todd Mims, along with TFA David Love, met with CS#1 in Clanton Alabama.   During this meeting, CS#1 was instructed to call Clifton JOHNSON and arrange a purchase of two ounces of crack cocaine for the following week. During the phone conversation, CS#1 introduced Drug Enforcement Administration Task Force Agent David Love to Clifton JOHNSON.   TFA Love is an undercover officer. During this call with JOHNSON, TFA Love was able to speak

directly with JOHNSON and arrange for the purchase of two ounces of crack cocaine from JOHNSON.

17. On June 23, 2005, Drug Enforcement Administration Task Force Agent Todd Mims, Undercover Officer TFA David Love and other agents met with CS#1 in Clanton, Alabama. CS#1 was searched and TFA Love was provided with $2,000.00 of Official Government Funds, for the purchase of two and a half ounces of crack cocaine. CS#1 contacted Clifton JOHNSON, via cell phone, and JOHNSON advised CS#1 to meet at the Chevron gas station in Clanton, Alabama. This conversation was recorded by agents. Surveillance was able to observe and positively identify JOHNSON meet with the CS and TFA Love at the Chevron gas station. During the meeting, JOHNSON offered cocaine hydrochloride to TFA Love. TFA Love told JOHNSON that he wanted Crack Cocaine and JOHNSON stated that it would take him about one hour to cook the cocaine hydrochloride into Crack. TFA Love told JOHNSON that he could wait. This meeting was recorded by agents. Agents then followed JOHNSON to his residence located at 7215 County Road 37, Clanton Alabama. JOHNSON remained at his residence approximately one hour. Agents then observed JOHNSON drive back to the Chevron gas station and provide the CS#1 with approximately two and one half ounces of crack cocaine in exchange for the $2,000.00 of

Official Government Funds.  CS#1 transferred custody of the crack cocaine to TFA David Love.  Laboratory results from the DEA South Central Lab, Dallas Texas, indicate that the submitted exhibit is indeed cocaine base (Crack Cocaine).

18. On July 12, 2005, Special Agent Raymundo Villalobos of the Drug Enforcement Administration Los Angeles District Office, acted on information from Task Force Agent Todd Mims, regarding Clifton JOHNSON traveling to California to pick up Cocaine in a tractor trailer truck.  Agents in California were able to set up surveillance on Clifton JOHNSON and observed JOHNSON driving a tractor trailer matching the description furnished by your affiant. Agents observed JOHNSON meet with a Hispanic male, later identified as Cecillo PACACHE. Surveillance observed JOHNSON remove two large duffle bags from the cab of the tractor trailer he was driving and load them into a pickup truck that PACACHE was driving.  A traffic stop was conducted on the pickup truck PACACHE was driving and the subsequent search of this vehicle revealed that the two duffle bags contained U.S. Currency in the amount of $1,962,970.00.

19. On August 11, 2005, while driving through a checkpoint on Interstate 10 in Sierra Blanca, Texas, a narcotics detection K-9, indicated the presence of narcotics in a

2005 Peterbuilt driven by Clifton JOHNSON.   A subsequent

search of the Tractor Trailer revealed approximately three

and one half pounds of Marijuana inside the cab of the

truck.   JOHNSON was arrested and released on bond.

DEVIN WHITTLE
SPECIAL AGENT DEA

Swaron to before me on
This the 19th day of October, 2005

VANZETTA McPHERSON
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF ALABAMA